

U.S. Department of Justice

United States Attorney
Eastern District of New York

EMN:DMP/AAS

271 Cadman Plaza East
Brooklyn, New York 11201

February 25, 2015

By Hand Delivery and ECF

The Honorable Lois Bloom
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re: United States v. Abdurasul Juraboev, et al.
       Criminal Docket No. 15-M-172

Dear Judge Bloom:

  Defendants Abdurasul Hasanovich Juraboev ("Juraboev"), also known as "Abdulloh Ibn Hasan," and Akhror Saidakhmetov ("Saidakhmetov") are scheduled to be arraigned today on the above-referenced complaint. For the reasons set forth below, the government respectfully submits that the Court should enter a permanent order of detention for both defendants because there is a presumption of detention due to the nature of the charges, and because the defendants present a danger to the community and a risk of flight.[1]

I. Background

  Early this morning, the defendants were arrested pursuant to a complaint charging them with attempting and conspiring to provide material support to ISIL, a foreign terrorist organization, in violation of 18 U.S.C. § 2339B.

  A. ISIL

  On October 15, 2004, the United States Secretary of State designated al-Qa'ida in Iraq, then known as Jam'at al Tawhid wa'al-Jihad, as a Foreign Terrorist Organization ("FTO") under Section 219 of the Immigration and Nationality Act and as a Specially Designated Global Terrorist entity under section 1(b) of Executive Order 13224.

---

[1] Detailed herein is a proffer of the relevant facts and a discussion of the applicable law pertaining to the pretrial detention of the defendants. See United States v. LaFontaine, 210 F.3d 125, 130-31 (2d Cir. 2000) (government entitled to proceed by proffer in detention hearings).

On May 15, 2014, the Secretary of State amended the designation of al-Qa'ida in Iraq as a FTO under Section 219 of the Immigration and Nationality Act and as a Specially Designated Global Terrorist entity under section 1(b) of Executive Order 13244 to add the alias Islamic State of Iraq and the Levant ("ISIL") as its primary name. The Secretary also added the following aliases to the ISIL listing: the Islamic State of Iraq and al-Sham ("ISIS"), the Islamic State of Iraq and Syria ("ISIS"), ad-Dawla al-Islamiyya fi al-'Iraq wa-sh-Sham, Daesh, Dawla al Islamiya, and Al-Furqan Establishment for Media Production. Although the group has never called itself "Al-Qaeda in Iraq," this name has frequently been used to describe it through its history.

Since 2013, ISIL has claimed credit for numerous terrorist activities, including seizing Mosul, a city in northern Iraq, and launching rocket attacks on eastern Lebanon in March 2014. These terrorist activities are part of ISIL's broader goal of forming an Islamic state or "caliphate" in Iraq and Syria.

  B. <u>The Charge in the Complaint</u>

The defendants are charged with attempting and conspiring to provide material support, including resources and personnel, to ISIL. Juraboev first came to the attention of law enforcement during the summer of 2014 after he made a posting on an Uzbek-language website that propagates ISIL's ideology. In his post, Juraboev offered to engage in act of martyrdom on U.S. soil on behalf of ISIL, such as killing the President of the United States. In a subsequent interview with FBI agents, Juraboev confirmed to the agents that, if ordered to do so by ISIL, he would kill the President or plant a bomb on Coney Island. Juraboev also confirmed that he had pledged allegiance to ISIL.

Similarly, Saidakhmetov expressed his support for ISIL. For example, on or about August 4, 2014, Saidakhmetov posted a message to the same website in which he referenced a video containing footage of multiple individuals pledging allegiance to ISIL and showing mass executions by ISIL of Iraqi forces captured during ISIL's takeover of Mosul, Iraq. Saidakhmetov wrote, "Allohu Akbar I was very happy after reading this, my eyes joyful so much victory."

During the investigation, both defendants expressed their interest in participating in violent jihad on behalf of ISIL. For instance, in a recorded conversation, Saidakhmetov expressed interest in joining the United States military so that he could pass information about the military's activities to ISIL in order to assist ISIL in its attacks. Alternatively, Saidakhmetov said that he would open fire on American soldiers and kill as many of them as possible. Similarly, in a written statement following his interview with the FBI, Juraboev wrote, "I also want to fight and sincerely become a martyr under the Islamic Caliphate against the polytheists and infidels."

The investigation subsequently revealed that Juraboev and Saidakhmetov devised a plan to travel to Turkey and then to Syria for the purpose of waging violent jihad

2

on behalf of ISIL.  Both defendants ultimately purchased tickets to travel from the United States to Turkey.  In fact, Saidakhmetov was arrested earlier this morning while trying to board a flight from John F. Kennedy International Airport ("JFK Airport") to Istanbul, Turkey.  Juraboev had previously purchased a plane ticket to travel from New York to Istanbul and was scheduled to leave the United States next month.[2]

In addition, Saidakhmetov also repeatedly stated his intent to engage in acts of terrorism in the United States if unable to travel to Syria.  For example, on or about January 11, 2015, he stated, "We will go and purchase one handgun . . . then go and shoot one police officer.  Boom . . . .  Then, we will take his gun, bullets and a bulletproof vest . . . then, we will do the same with a couple of others.  Then we will go to the FBI headquarters, kill the FBI people. . . ."  On or about February 19, 2015, Saidakhmetov stated that, if he were detected at JFK Airport while departing for Turkey, he would kill a police officer and use the officer's gun to shoot other law enforcement officers that subsequently arrived on the scene.

II.     Legal Standard

Under the Bail Reform Act, Title 18, United States Code, Section 3141, et seq., federal courts are empowered to order a defendant's detention pending trial upon a determination that the defendant is either a danger to the community or a risk of flight.  See 18 U.S.C. § 3142(e) (a judicial officer "shall" order detention if "no condition or combination of conditions would reasonably assure the appearance of the person as required and the safety of any other person and the community").  A finding of dangerousness must be supported by clear and convincing evidence.  See United States v. Ferranti, 66 F.3d 540, 542 (2d Cir. 1995); United States v. Chimurenga, 760 F.2d 400, 405 (2d Cir. 1985).  A finding of risk of flight must be supported by a preponderance of the evidence.  See United States v. Jackson, 823 F.2d 4, 5 (2d Cir. 1987); Chimurenga, 760 F.2d at 405.

The Bail Reform Act also sets forth certain offenses for which there is a presumption in favor of detention.  Specifically, where a defendant is charged with certain enumerated offenses, the Bail Reform Act provides that "[s]ubject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community."  18 U.S.C. § 3142(e)(3). Such presumption is applicable where "the judicial officer finds that there is probable cause to believe that the [defendant] committed" any of the following offenses:

> (C) an offense listed in section 2332b(g)(5)(B) of title 18, United States Code, for which a maximum term of imprisonment of 10 years or more is prescribed.

---

[2]     A third defendant, Abror Habibov, who had provided financial support to Saidakhmetov was arrested earlier today in Florida.  He was arraigned this afternoon in front of United States Magistrate Judge Patricia D. Barksdale in the U.S. District Court for the Middle District of Florida.

3

18 U.S.C. § 3142(e)(3). Section 2332b(g)(5)(B), in turn, lists a number of terrorism offenses, including 18 U.S.C. § 2339B, which carries a maximum term of 15 years' imprisonment.

Accordingly, the charged offense carries this presumption of detention, as the defendants are charged with attempting and conspiring to provide material support to a foreign terrorist organization, in violation of 18 U.S.C. § 2339B, which is an offense specified in 18 U.S.C. § 3142(e)(3)(C). Therefore, there is a presumption that no condition or combination of conditions will permit the defendant to be released on bond.

The Bail Reform Act lists the following factors to be considered in the detention analysis: (1) the nature and circumstances of the offenses charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. See 18 U.S.C. § 3142(g). As discussed below, all of these factors weigh heavily against pretrial release.

III. The Court Should Enter a Permanent Order of Detention for the Defendants

As set forth above, there is a presumption that no condition or combination of conditions will permit the defendants to be released on bond. Moreover, the factors to be considered in the detention analysis show that the defendants present both a significant danger to the community and a substantial risk of flight if released on bond. Accordingly, the Court should enter a permanent order of detention pending trial.

A. The Nature and Circumstances of the Offense Charged

The charged offense is extremely serious. The defendants are charged with attempting and conspiring to provide material support to ISIL. ISIL is a foreign terrorist organization that is responsible for numerous acts of violence, including mass executions of Iraqi forces as well as beheadings and an immolation of captives. The charged offense involves efforts by the defendants to cause the death of others by waging violent jihad on behalf of ISIL. As noted above, Saidakhmetov celebrated the mass executions by ISIL, stating that a video showing such executions made him "very happy" and that he was "joyful" because ISIL had achieved "so much victory." Similarly, Juraboev expressed his desire to fight and become a martyr on behalf of ISIL.

The charged conduct concerns the defendants' considerable efforts to travel overseas to join ISIL in order to wage violent jihad. As outlined above, both defendants, who have pledged their allegiance to ISIL, purchased airplane tickets to Istanbul for the purpose of joining ISIL in Syria. Further, Saidakhmetov was arrested on a jetway at JFK Airport as he attempted to board a flight to Istanbul.

4

In listing the "nature and circumstances of the offense charged" as a criterion in the detention analysis, the Bail Reform Act specifically provides that the Court is to consider whether the crime charged is, among others, a crime of violence or a Federal crime of terrorism. See 18 U.S.C. § 3142(g)(1). The charged offense unquestionably falls within this category, confirming that Congress viewed these crimes as sufficiently serious to factor against release on bond.

Indeed, as set forth above, Congress recognized the seriousness of this offense by specifically enumerating it among those offenses that carry a presumption that no condition or combination of conditions will be sufficient to permit a defendant to be released on bond. Even where a defendant can rebut this presumption, the Court is still required to give some weight to the presumption in the detention analysis, "keeping in mind that Congress has found that these offenders pose special risks" and that "a strong probability arises that no form of conditional release" will assure the defendant's return to court or adequately protect the community. United States v. Martir, 782 F.2d 1141, 1144 (2d Cir. 1986) (citation and internal quotation marks omitted).

Moreover, the charged offense carries a maximum sentence of 15 years' imprisonment. The prospect of a lengthy term of incarceration confirms the defendants' serious risk of flight. Indeed, as the defendants' objective is to travel to Syria to join ISIL and as both defendants have expressed the desire to become martyrs on ISIL's behalf, there is no reason to think that they would abide by any conditions of release. Instead, there is every reason to think that they will make efforts to flee from the United States so that they can avoid the prospect of a lengthy prison term and so that they can accomplish their objective of fighting and dying on behalf of ISIL.

        B.        The Weight of the Evidence

The weight of the evidence against the defendants is extremely strong.

Objective documentary evidence confirms that both defendants purchased tickets to travel from the United States to Istanbul. Indeed, Saidakhmetov was arrested while attempting to board his flight to Istanbul.

Moreover, the defendants were captured in recorded communications discussing: (1) their efforts to communicate with purported members of ISIL regarding travel routes into Syria from Turkey, (2) their efforts to purchase tickets to Istanbul for the purpose of traveling into Syria to join ISIL, and (3) their intent to join ISIL for the purpose of waging violent jihad. Additionally, Saidakhmetov repeatedly expressed in recorded communications his intent to attack members of U.S. law enforcement if his efforts to travel to Syria were thwarted, and Juraboev has admitted to federal law enforcement officials his willingness to commit acts of violence in the United States if ordered to do so by ISIL.

Accordingly, the evidence against the defendants is extremely strong, and this factor weighs heavily in favor of a finding that the defendants are both a danger to the community and a flight risk.

  C. <u>The Defendants' History and Characteristics</u>

  The defendants' history and characteristics confirm that they are both a danger to the community and present a substantial risk of flight.

  First, as discussed above, the defendants are a danger to the community because of their allegiance to ISIL. Indeed, Juraboev has expressed his willingness to engage in acts of terrorism in the United States if ordered to do so by ISIL, including killing the President or planting a bomb on Coney Island in Brooklyn. Similarly, Saidakhmetov has expressed his intent to engage in acts of terrorism in the United States if unable to join ISIL in Syria. In one such statement, he discussed the prospect of buying a gun to kill police officers and FBI agents.

  Second, the defendants' history and characteristics also confirm that they present a substantial risk of flight.

  The defendants are citizens of Uzbekistan and Kazakhstan, respectively. Saidakhmetov was arrested while trying to board a plane to Istanbul. Indeed, Saidakhmetov made no secret of his desire to travel to Syria to join ISIL. Saidakhmetov's mother thought that Saidakhmetov was so likely to attempt to travel to Syria that she confiscated his passport in an effort to thwart him. In response, Saidakhmetov tried repeatedly to convince his mother to return his passport, and eventually forged an application for a travel document in order to fly to Syria without his passport. Given the extreme lengths undertaken by Saidakhmetov to travel, he clearly presents a significant risk of flight.

  Juraboev also purchased a ticket for travel to Istanbul in March 2015. After Saidakhmetov purchased a ticket for February 25, 2015 – approximately one month before Juraboev's scheduled travel – Juraboev contemplated changing his scheduled travel date to fly to Turkey as early as this coming weekend. Indeed, Juraboev requested permission from his employer, saying that he wanted to leave the United States this weekend and asking whether that would create any problem for his employer.

  Were the defendants successful in their efforts to join ISIL in Syria, the United States would have little ability to secure their return. Moreover, they would also present a significant risk of danger to the community abroad, as they have both expressed the intent to obtain weapons, fight, and martyr themselves on behalf of ISIL.

  Moreover, given that they face substantial terms of imprisonment, there is no reason for the defendants to remain in the United States to face trial. Indeed, were the defendants to flee the United States, they would have access to parts of the world from which the United States has limited ability to recapture or extradite them. Accordingly, the

government respectfully submits that the defendants represent a substantial risk of flight if released on bond.

   D. <u>The Danger to the Community Posed by the Defendants' Release</u>

   Finally, as already discussed above, the defendants would pose a significant danger to the community if they were to be released on bond. The defendants have expressed support for the violent nature of the attacks carried out by ISIL. Indeed, Juraboev stated that, if ordered to do so by ISIL, he would kill the President or detonate a bomb in Coney Island. Either of those scenarios obviously presents a significant danger to the community. Likewise, Saidakhmetov's stated intent to attack members of U.S. law enforcement if unable to travel to Syria presents a significant threat not only to the law enforcement community in particular but also to any civilian bystanders that might be harmed if Saidakhmetov were to carry out this repeated threat. Were the defendants to be released into the community, there is no reason to believe they would not continue in their efforts to support ISIL by engaging in acts of terrorism on American soil.

IV. <u>Conclusion</u>

   For all of the foregoing reasons, the defendants should be detained pending trial. The defendants are charged with an extremely serious offense, which carries a presumption of detention, and face potential sentences of 15 years' imprisonment. The government respectfully submits that no condition or combination of conditions will assure the safety of the community, the defendants' return to court, or their compliance with the court's directives, and the Court should thus enter a permanent order of detention pending trial.

               Respectfully submitted,

               LORETTA E. LYNCH
               United States Attorney

           By: /s/ Douglas M. Pravda
               Douglas M. Pravda
               Alexander A. Solomon
               Assistant U.S. Attorneys
               (718) 254-7000

cc: Clerk of Court (by ECF and hand)